# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:10-cv-01565-SKO |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE** |
| v. | |
| APPROXIMATELY $129,190.00 IN U.S. CURRENTLY, et al. | (Docket No. 53) |
| Defendants. | |

## I. INTRODUCTION

On March 23, 2012, Plaintiff United States of America (the "Government" or "Plaintiff") filed an application for default judgment and for final judgment of forfeiture in this *in rem* forfeiture action. (Doc. 53.) No opposition to the Government's application has been filed, and the time to file an opposition has expired. The Court has reviewed the motion and supporting documentation and has determined that this matter was suitable for submission without oral argument pursuant to Local Rule 230(g). For the reasons set forth below, Plaintiff's application for default judgment and for final judgment of forfeiture is GRANTED.

## II. FACTUAL BACKGROUND

Plaintiff's complaint, filed on August 30, 2010, alleges that February 20, 2010, an officer ("Officer 1") with the California Highway Patrol ("CHP") stopped a 2004 Porsche Cayenne bearing no license plates or registration traveling southbound on Interstate 5. (Doc. 1, ¶ 5.) Officer 1 contacted the driver of the vehicle, Argenis Amitt Valentin Nevarez ("Nevarez"), and observed three additional occupants in the vehicle – Ivan Espino Figueroa ("Figueroa"), Jorge Ruiz Jimenez, and a juvenile passenger. (Doc. 1, ¶ 6.) Nevarez handed Officer 1 his driver's license and Figueroa handed the officer the other documentation for the vehicle. (Doc. 1, ¶ 6.) Officer 1 noticed that one of the documents for the vehicle was a California Salvage Title for a different 2004 Porsche Cayenne and requested that Nevarez step over to the patrol car to discuss the vehicle documents. (Doc. 1, ¶ 6.)

Officer 1 spoke briefly with Nevarez and became concerned that the vehicle could be a Vehicle Identification Number ("VIN") switched vehicle. (Doc. 1, ¶ 7.) Officer 1 patted down Nevarez and observed what he believed to be a large bundle of currency in Nevarez' pants pocket. (Doc. 1, ¶ 7.) When asked about the bundle, Nevarez pulled out a large bundle of currency from his pocket held together by a rubber band that appeared to contain several smaller bundles. (Doc. 1, ¶ 7.) Nevarez stated that he was carrying approximately $1,000.00 to $2,000.00 to be used for the purchase of stereo equipment for his stereo shop located in San Francisco. (Doc. 1, ¶ 7.) The money was later counted and totaled $10,100.00, all in $100 bills. (Doc. 1, ¶ 7.)

Officer 1 requested additional assistance from a CHP K-9 unit. (Doc. 1, ¶ 8.) While waiting for the backup to arrive, Officer 1 returned to the vehicle to check the VIN and conversed with Figueroa to determine what he knew about the vehicle. (Doc. 1, ¶ 8.) Figueroa informed Officer 1 that Nevarez had borrowed the vehicle for the trip. (Doc. 1, ¶ 8.) Officer 1 returned to the patrol car where Nevarez was waiting, and issued Nevarez a citation for failure to display license plates and for expired registration. (Doc. 1, ¶ 8.)

The second officer ("Officer 2") and his narcotic-detecting canine "Timo" arrived and, after the Officer 1 relayed his suspicions to Officer 2, Officer 2 approached the vehicle and began conversing with Figueroa, who informed Officer 2 that he was in possession of approximately

$4,000.00 to $5,000.00.  (Doc. 1, ¶ 8.)  Officer 1 advised Nevarez that he was free to go and then asked and received verbal and written consent to search the vehicle.  (Doc. 1, ¶ 9.)  The occupants of the vehicle informed the officers that there was nothing in the vehicle that they did not want searched and that there was no additional money in the vehicle.  (Doc. 1, ¶ 9.)

"Timo" conducted a sniff-search of the exterior and interior of the vehicle and made positive alerts to an article of luggage where a large amount of cash was hidden.  (Doc. 1, ¶ 10.)  The cash consisted of several bundles held together with rubber bands; Figueroa stated that there was approximately $100,000.00 in the suitcase and that he was afraid to mention the money because he believed he would get in trouble for possessing that amount of cash.  (Doc. 1, ¶ 10.)  Figueroa stated that he acquired the money from the sale of real property in Mexico, but was unable to state the location of the city or the property.  (Doc. 1, ¶ 10.)  Figueroa then changed his statements and informed the officers that the money actually belonged to his mother and stepfather, and that his mother had sold the property in Mexico.  (Doc. 1, ¶ 10.)  Figueroa stated that he was delivering the money to someone in Los Angeles, but did not know the name of the person or when he would be delivering the money.  (Doc. 1, ¶ 10.)

In a handbag also claimed by Figueroa, the officers located approximately $4,700.00 in denominations ranging form $10 bills to $100 bills.  (Doc. 1, ¶ 11.)  The currency in the luggage and the handbag totaled approximately $129,100.00.  (Doc. 1, ¶ 11.)  Nevarez and Figueroa were unable to produce receipts to legitimately claim the money and informed the officers that they did not have employment records that could justify having earned any money through legal employment.  (Doc. 1, ¶ 12.)  Nevarez subsequently disclaimed any ownership in the $129,190.00.  (Doc. 1, ¶ 12.)

### III.   PROCEDURAL BACKGROUND

On August 30, 2010, the Government filed a civil action for forfeiture *in rem* pursuant to 21 U.S.C. § 881(a)(6) of the defendant currency of approximately $129,190.00 and approximately $10,100.00 (collectively "defendant currency").  On May 26, 2011, the Clerk of Court issued a Warrant for Arrest of Articles In Rem for the defendant currency.  (Doc. 5.)

On September 23, 2010, the Court granted the Government's application for publication, authorizing public notice of the action and the arrest of the defendant currency via the official internet government forfeiture cite (www.forfeiture.gov) for at least 30 consecutive days. (Doc. 6.) Publication in a manner consistent with the Court's order commenced on September 28, 2010. (Doc. 10.)

The government also caused notice to be served to the following individuals with suspected potential interest in the defendant currency – Figueroa, Nevarez, Perla Espino ("Espino"), and Cipriano Estrada ("Estrada") (aka Cipriano Espino). (Doc. 53, 4:19-8:3.)

On September 21, 2010, copies of the Complaint, Application and Order For Publication, Order Re Issuance of Clerk's Arrest Warrant, Warrant for Arrest of Articles *In Rem*, Order Setting Mandatory Scheduling Conference, Notice of Availability of Magistrate Judge, Notice of Availability of Voluntary Dispute Resolution, and notice-of-forfeiture letter dated September 21, 2010, ("the case documents") were sent via first class mail and certified mail to Figueroa's last known address, 1607 McGinnis Avenue, San Jose, California 95127. (Doc. 21-1, Rodriguez Decl., ¶ 5.) While the certified receipt was not returned, the United States Postal Service's online Track & Confirm website indicated that the certified mailing was delivered on September 23, 2010. (Doc. 21-1, Rodriguez Decl., ¶ 5.) On October 8, 2010, the United States Marshals Service ("U.S. Marshals") attempted to personally serve Figueroa and spoke with Patricia Torres, who stated that she had lived at that residence for 18 months and no one with Figueroa's name had lived there during that time. (Doc. 21-1, Rodriguez Decl., ¶ 6.)

On September 21, 2010, the case documents were served on Espino and Estrada at their last know address, 27333 Tyrrell Avenue, Hayward, California 94544. (Doc. 22-1, Rodriguez Decl., ¶ 5; Doc. 53, 7:5-8.) The certified return receipt cards were signed by Guadalupe Lopez. (Doc. 22-1, Rodriguez Decl., ¶ 5; Doc. 53, 7:8.) On October 7 and 12, 2010, the U.S. Marshals attempted to personally serve the case documents on Espino and Estrada; on the latter date they spoke with Lupe Lopez, who stated that she rents the residence from Espino but that she did not have Espino's address or phone number; Ms. Lopez also stated that she did not know Estrada. (Doc. 22-1, Rodriguez Decl.,

¶ 6; Doc. 53, 7:19-23.) The U.S. Marshals left process for both Espino and Estrada with Ms. Lopez to give to Espino when the rent was collected. (Doc. 22-1, Rodriguez Decl., ¶ 6, Doc. 53, 7:24-8:1.)

On September 21, 2010, the case documents were mailed to Nevarez at his last known address, 5450 Monterey Road, #41A, San Jose, California 95111. (Doc. 46-1, Rodriguez Decl., ¶¶ 5, 7.) The certified mailing was returned to the United States Attorney's Office as unclaimed. (Doc. 46-1, Rodriguez Decl., ¶ 5.) The U.S. Marshals attempted personal service of the case documents on Nevarez on October 8, 2010, at his last know address and spoke with Daisy Robles, who said that "no Nevarez" lived there. (Doc. 46-1, Rodriguez Decl., ¶ 7.)

Also on September 21, 2010, the case documents for Nevarez and Estrada were mailed to attorney Patrick J. McCarthy. (Doc. 46-1, Rodriguez Decl., ¶ 6; Doc. 53, 7:15-18.) Nevarez and Estrada filed claims in civil forfeiture, answers to the complaint, and counterclaims. (Docs. 12-15.)

Figueroa and Espino did not file claims or answers, and on February 28, 2011, the Clerk of Court entered default against them. (Docs. 23-24.)

On March 14, 2011, the Government filed answers to Nevarez and Estrada's counterclaims. (Docs. 27-28.) On May 4, 2011, pursuant to the stipulation of the parties, the Court ordered dismissal of Estrada's counterclaim, and on May 11, 2011, ordered the dismissal of Nevarez' counterclaim. (Docs. 32-33.)

A scheduling conference was held on May 10, 2011, and on that date the parties consented to the jurisdiction of the U.S. Magistrate Judge. Accordingly, on May 16, 2011, the case was reassigned to Magistrate Judge Sheila K. Oberto for all purposes. (Docs. 34, 35-39, 41.) On November 2, 2011, pursuant to the stipulation of the parties, the Court ordered that the Nevarez' claim and answer be withdrawn and that default judgment be entered against him. (Doc. 44.) On December 6, 2011, the same was ordered against Estrada. (Doc. 47.) Judgments were entered against Nevarez and Estrada on December 6, 2011. (Docs. 48-49.)

On March 23, 2012, the Government filed the instant motion for default judgment against Figueroa, Espino, Nevarez, and Estrada, seeking the entry of a Final Judgment of Forfeiture vesting all right, title, and interest in the defendant currency to the United States. (Doc. 53.)

## IV.   DISCUSSION

**A.**   **Legal Standard**

Federal Rule of Civil Procedure 55 provides that a court has discretion to enter default judgment against a party after the clerk has entered the party's default.  In considering whether to enter default judgment, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the compliant; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cit. 1986).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Federal Rules of Civil Procedure, Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"); and the court's Local Rules for Admiralty and *in rem* actions.  *See United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir. 1994) (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules), *superseded by statute on other grounds*.

**B.**   **Procedural Requirements**

**1.**   **Sufficiency of the Complaint**

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. R. G(2).  With regard to the sufficiency of the factual detail of the verified complaint, the Government is not required to show a relationship between the proceeds of a drug crime and a specific drug transaction. Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime. *See United States v. $30,670.00*, 403 F.3d 448, 467-70 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was

1  connected to drug trafficking and subject to forfeiture); *United States v. $242,484.00*, 389 F.3d 1149,
2  1160 (11th Cir. 2004) (applying totality of the circumstances to determine that cash carried by airline
3  passenger was the proceeds of, or traceable to, an illegal drug transaction).

4      The Government contends that the verified complaint establishes circumstantial evidence
5  indicating that the defendant currency was furnished or intended to be furnished in exchange for a
6  controlled substance or listed chemical and is subject to forfeiture pursuant to Section 881(a)(6).
7  Pursuant to 21 U.S.C. § 881(a)(6), the following is subject to forfeiture to the United States:

> (6)    All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

12  21 U.S.C. § 811(a)(6).

13      Here, the allegations of the verified complaint indicate that a traffic stop revealed a
14  VIN-switched title on the vehicle, inconsistent statements made by Nevarez and Figueroa, and
15  positive alerts on the defendant currency by the narcotic-detecting canine. (Doc. 1, ¶¶ 5-11.)
16  Further, during the interview with Nevarez and Figueroa, neither one could provide receipts or
17  substantial explanation for the source of the defendant currency, nor could they provide information
18  as to legal employment to justify the defendant currency. (Doc. 1, ¶ 12.) Based on these allegations
19  in the verified complaint, there is sufficient circumstantial evidence to reasonably believe that the
20  defendant currency constitutes "moneys" furnished or intended to be furnished in exchange for a
21  controlled substance or was used or intended to be used to facilitate one or more violations of
22  21 U.S.C. § 841, *et seq.*

23    **2.    Notice by Publication**

24      Subject to certain exceptions not present here, the Supplemental Rules require the
25  Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify
26  potential claimants of the action. Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The content of the notice
27  must describe the property with reasonable particularity, state the times to file a claim and to answer
28  the complaint, and name of the government attorney to be served with the claim and answer. Fed.

1  R. Civ. P. Supp. R. G(4)(a)(ii)(A)-(C). This notice requirement may be satisfied by posting a notice
2  on an official internet government forfeiture site for at least 30 consecutive days. Fed. R. Civ. P.
3  Supp. R. G(4)(a)(iv)(C). The United States District Court, Eastern District of California Local Rule
4  171 provides that the court shall designate by order the appropriate newspaper or other vehicle for
5  publication.

6        Here, the Court ordered notice by publication to occur on the official internet government
7  forfeiture site (www.forfeiture.gov) for at least 30 consecutive days. (Doc. 6.) The Government
8  filed a Declaration of Publication stating that notice had been created and published on the forfeiture
9  website for 30 days. (Doc. 10.) A copy of the notice was attached to the Declaration of Publication,
10 and it described the property with reasonable particularity by including not only the amount of the
11 defendant currency, but also where and when it was seized. (Doc. 10, p. 3.) The notice clearly stated
12 the time requirements to file a claim and an answer. (Doc. 10, p. 3.) Further, the notice provided
13 the name of the attorney to be served with any claim and answer. (Doc. 10, p. 3.) Thus, the
14 Supplemental Rule's notice-content requirements have been satisfied. Fed. R. Civ. P. Supp. R.
15 G(4)(ii)(A)-(C). Additionally, the notice was published for 30 consecutive days from September 28,
16 2010, through October 27, 2011, on the forfeiture website, which satisfies the Supplemental Rule's
17 notice requirements with regard to frequency and means. (Doc. 10, p. 4.)

18     **3.**    **Personal Notice**

19       When the Government knows the identity of the property owner, the Due Process Clause of
20 the Fifth Amendment requires "the Government to make a greater effort to give him notice than
21 otherwise would be mandated." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).
22 In such cases, the Government must attempt to provide actual notice by means reasonably calculated
23 under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v.*
24 *United States*, 534 U.S. 161, 168 (2002). "Reasonable notice, however, requires only that the
25 [G]overnment attempt to provide actual notice; it does not require that the [G]overnment
26 demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States*
27 417 F.3d 1189, 1197 (11th Cir. 2005); *Real Property*, 135 F.3d at 1316.
28

The Supplemental Rules indicate that the Government must send notice of the forfeiture action "to any person who reasonably appears to be a potential claimant on the facts known to the government." Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must include the following information: the date when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and the name of the government attorney to be served with the claim and answer.

Here, the Government attempted notice of the forfeiture action to Nevarez, Estrada, Figueroa, and Espino through first class mail, certified mail, and personal service. As required by the Supplemental Rules, the notice informed the potential claimants the date on which the notice was sent, the deadline for filing a claim, that an answer or a motion under Rule 12 was to be filed no later than 21 days after filing a claim, and that any document filed with the Court "must be served on this office," directing service to the office of Benjamin B. Wagner, United States Attorney for the Eastern District of California located at 2500 Tulare Street, Fresno California.[1] (Docs. 21-1, 22-1, 46-1, Rodrigez Decls., Exhs. A-B; Doc. 53, 7:5-8:9.)

Further, Nevarez and Estrada appeared in this action and filed claims, answers, and counterclaims, which they subsequently stipulated to withdraw and have default judgment entered against them. (Docs. 12-15, 32-33, 44, 47-49.) As such, they had notice of the forfeiture action.

**4.    The Time to File a Claim or an Answer**

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right in a forfeiture action such as this must have filed a claim with the Court within the time specified by the direct notice. Fed. R. Civ. P. Supp. G(4)(b)(ii)(B), (5)(a)(ii)(A). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. *Real Property*, 135 F.3d at 1317. In this case, no claim or answer was filed by Figueroa or Espino, and defaults were properly entered them on February 28, 2011. (Docs. 21-22.) As for Nevarez and Estrada, they stipulated to withdraw their claims, answers, and

---

[1] The notice provides the name of the United States Attorney, Benjamin B. Wagner, indicating that service of any claim or answer must be served on the office of the United States Attorney for the Eastern District of California, at 2500 Tulare Street, Suite 4401, Fresno, California. This satisfies the notice to known potential claimants pursuant to Rule G(4)(b)(ii)(D).

9

counterclaims, and default judgment was entered against them on November 3, 2011, and December 6, 2011, respectively. (Docs. 44, 47-49.)

### 5. Conclusion

The Government has met the procedural requirements applicable to civil *in rem* forfeiture actions as set forth in 18 U.S.C. § 983, the Supplemental Rules, and the Local Rules of the Eastern District. This favors the entry of default judgment and the issuance of a final judgment in forfeiture to vest in the United States all right, title, and interest in the defendant currency.

## C.   Discretionary Factors

Beyond satisfaction of the procedural requirements, the discretionary *Eitel* factors outlined by the Ninth Circuit also favor granting the Government's motion for default judgment. First, the Government would be prejudiced by the denial of its motion spending additional time and effort litigating an action in which claimants have either not appeared or have stipulated to withdraw their claims. Second, the Government's claims appear to have merit. Third, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem*, including the filing of a sufficient complaint. Fourth, the item that was seized and subject to forfeiture is not of such substantial value as to warrant denial of the Government's motion. Fifth, there are no genuine issues of material fact that are disputed. Sixth, there is no evidence that the failure of any claimant to answer is due to excusable neglect. Finally, although merits-based decisions are always preferred, it is not practical where no claimant has appeared, and this factor is outweighed by the remainder of the *Eitel* factors.

## V.   CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff United States of America's application for default judgment and final judgment of forfeiture is GRANTED;

2. Default judgment is ENTERED against the interests of Perla Espino and Ivan Espino Figueroa[2];

---

[2] The Court notes that default judgment has previously been entered against Argenis Amitt Nevarez and Cipriano Estrada. (Docs. 44, 47-49.)

3. The Clerk of the Court is DIRECTED to enter final forfeiture to vest in Plaintiff United States of America all right, title, and interest in the defendant currency; and

4. The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

Dated:   **May 11, 2012**                               /s/ Sheila K. Oberto
                                                  UNITED STATES MAGISTRATE JUDGE